Sylvester **RANDOLPH**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 46176.

Court of Criminal Appeals of Texas.

May 1, 1973.

V. G. Kolius, Amarillo, for appellant.

Tom Curtis, Dist. Atty., Amarillo, Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

ONION, Presiding Judge.

This appeal arises out of a conviction for murder with malice wherein the punishment was assessed at 99 years.[1]

The State's evidence reflects that while en route from Florida to California appellant and one Earl Mabry stopped in a Gulf Service Station in Amarillo with the intention of committing a robbery and, during the course of said robbery, Mabry shot and killed the service station attendant, LeRoy Thompson. Both men fled the scene and drove into New Mexico. The appellant was apprehended in Albuquerque, New Mexico, and returned to Amarillo.

At the outset, appellant contends the court erred in admitting into evidence his extra-judicial confession "in that there was no evidence that said confession was voluntarily given, and the introduction thereof into evidence violated the Constitutional rights of the Appellant as protected by the Fifth and Fourteenth Amendments."

Prior to trial, the trial judge conducted a separate hearing on the confession's voluntariness in accordance with Article 38.22, Vernon's Ann.C.C.P., and Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d

1. This is a companion case to Mabry v. State, 492 S.W.2d 951 (Tex.Cr.App.1973).

908 (1964). Thereafter, he filed findings of facts and conclusions of law in which he concluded the confession was admissible. At the trial, the issue of voluntariness was submitted to the jury under appropriate instructions.

It appears to be appellant's contention that the confession was involuntary because his request for counsel was not honored.

The record reflects that the appellant was duly warned of his rights in New Mexico by both a Texas officer and a New Mexico officer and no effort to interrogate him was made. Upon his return to Amarillo, he was taken at 3:25 p.m. on April 28, 1971 before Municipal Judge Jim Blair who warned the appellant in accordance with Article 15.17, Vernon's Ann.C.C.P. It was at this point that appellant indicated to the judge he desired the appointment of a lawyer. The judge announced that he did not appoint counsel and that this would have to be done by a Justice of the Peace. The appellant was then taken to a nearby room where Officer Bevers again warned him in accordance with Article 38.22, supra, and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant then signed the written confession at 4:00 p.m. Officer Bevers testified that, after the warnings, the appellant stated he did not want a lawyer and wanted to tell "his side of the story." The written statement also contained a waiver of counsel.

At the separate hearing, the appellant did not offer any evidence. The trial court found that, although the appellant had requested the appointment of counsel when appearing before the magistrate, he subsequently changed his mind and voluntarily and intelligently waived the right to counsel. The record supports the findings.

At the trial, after the confession was admitted, the appellant, who had finished the eighth grade, was 26 years old at the time of the confession, and who had had numerous brushes with the law, testified that he was told by Officer Bevers that counsel would be appointed after he gave a statement. After his testimony, no effort was made to have the confession withdrawn, and the issue of voluntariness was submitted to the jury.

■ While extreme care must be exercised in taking a confession after request for counsel has been made unless a subsequent waiver of counsel is made, we find here that the State sustained its burden in demonstrating that the appellant knowingly and intelligently waived his privilege against self-incrimination and the right to counsel. See Hill v. State, 429 S.W.2d 481 (Tex.Cr.App.1968).

■ Appellant makes much of Officer Bevers' testimony on cross examination that he had been instructed by the magistrate to take the appellant before a Justice of the Peace for the appointment of counsel and that instead he took the appellant to a nearby room for interrogation. This was not the officer's testimony on re-direct examination nor is this contention supported by the magistrate's testimony. Under any circumstances, it does not prevent the finding of a valid waiver.

Appellant's first ground of error is overruled.

Appellant also complains of the admission of the confession into evidence on the ground that the State had failed to show probable cause for his arrest, that he had been illegally arrested and detained prior to the making of the confession.

■ There was no objection to the confession on this ground when offered and nothing is presented for review. No question of the legality of the arrest was raised during the trial and the circumstances under which appellant's arrest took place were not related. Still further, an illegal arrest will not normally vitiate a confession. Lacefield v. State, 412 S.W.2d 906 (Tex.Cr.App.1967).

Next, appellant complains of the court's failure to charge the jury that, if he had entered into a common plan or design with Mabry to rob the deceased but, prior to the time of the robbery, had abandoned or withdrawn from the commission of the plan, they should acquit.

This defensive theory should be given if supported by the evidence, but in the case at bar it was not. The appellant testified that he never agreed with Mabry to commit a robbery so there was no common design or plan to be abandoned.

Appellant also complains that the court "erred in failing to instruct the jury that if the Appellant's co-defendant was acting outside of the common design of the parties, and if the Appellant had no knowledge of the intent of his co-defendant, and did not participate in the shooting of the deceased, and that in the event the death of the deceased was not a natural and probable consequence of their common design, then the jury should find the Appellant not guilty."

In support of his contention, he calls attention to his own testimony that he didn't think Mabry "was going to do anything" and that he thought Mabry was "kidding," that he did not intend to rob the deceased, and did not have any active part in the offense, and that he intended only to ask the deceased for a job.

The court charged the jury, in part, as follows:
    " . . . .

"All persons are principals who are guilty of acting together in the commission of an offense. When an offense is actually committed, by one person, but another person is present, and, knowing the unlawful intent, aids by acts, or encourages by words and gestures, that person actually engaged in the commission of the unlawful act, such person so aiding or encouraging is a principal offender and may be prosecuted as such.

"When two or more persons agree to commit a felony, or unlawful act, and in acting together in the execution of such common design, a different offense, not intended as a part of the original common design, is committed by one or all of such persons, then all who are engaged in the unlawful purpose are equally guilty of the offense committed, provided such offense was committed in the furtherance of the original common purpose and design, and provided the facts show that it was such an offense as might have been, and should have been, contemplated by the parties would be the result of the execution of the original common design, and it was so executed, though at the time those not actually committing said offense may have been engaged in some other part of the common purpose and design.

"Now if you find from the evidence beyond a reasonable doubt, that Earl Mabry and Sylvester Randolph entered into a common plan and design to rob LeRoy Thompson, and that in the execution or attempted execution of such robbery, if any, Earl Mabry, on or about the 27th day of April, 1971, in Potter County, Texas, voluntarily and with malice aforethought, killed LeRoy Thompson, by shooting him with a gun, and that the Defendant, Sylvester Randolph, was then and there present, and acting together with the said Earl Mabry, in the execution, or attempted execution of such robbery, if any, and that the death of the said LeRoy Thompson followed immediately in the execution of such common design, if any, as one of its natural and probable consequences, and the said death of LeRoy Thompson might have been and should have been foreseen by the Defendant, Sylvester Randolph, as one of the natural and probable consequences which would result from the execution of such common design, if any, you will find the Defendant, Sylvester Randolph, guilty of murder with malice aforethought.

"You are further instructed that if you believe that Sylvester Randolph was not acting together with the said Earl Mabry in robbing, or attempting to rob LeRoy Thompson, if he did, or if Sylvester Randolph had not previously entered into an agreement with the said Earl Mabry to rob, or attempt to rob, the said LeRoy Thompson, if they did, or if you have a reasonable doubt thereof, you will acquit the Defendant, Sylvester Randolph.

"You are further instructed that the mere presence of Sylvester Randolph at the scene of the shooting of LeRoy Thompson would not constitute him a principal, and if you should find from the evidence beyond a reasonable doubt, that Earl Mabry, on the 27th day of April, 1971, in Potter County, Texas, did then and there shoot and kill LeRoy Thompson with a gun, and that the Defendant, Sylvester Randolph, was present, but you further find and believe from the evidence, or have a reasonable doubt thereof, that the defendant, Sylvester Randolph, did not aid by acts or encouraged by words, the said Earl Mabry in the actual shooting of the said LeRoy Thompson, or did not aid by acts or encourage by words the said Earl Mabry in the attempted robbery, if any, of the said LeRoy Thompson, then you will find the Defendant, Sylvester Randolph, not guilty.

" . . . . "

■ If it can be argued that the evidence supports the giving of the charge requested, we conclude that error is not reversible as the charge actually given fully protected the appellant's rights and did not deprive him of a fair trial. See Article 36.19, Vernon's Ann.C.C.P.

■ Lastly, we shall consider appellant's complaint that the court erred in refusing to grant a mistrial when the prosecutor attempted to introduce into evidence an envelope containing marihuana allegedly found in the co-defendant's vehicle.

While testifying at the penalty stage of the trial, the appellant related he had worked as a narcotic undercover agent for law enforcement officials in Arkansas. He was interrogated about the same on cross examination. Then, he was asked:

"Q You wouldn't know marijuana if you saw it, would you?

"A Yes, I would.

"Q Have you ever seen that before; look at this jury and tell them if you have ever seen that before?

"A I really don't know.

"Q It came out of the car that you and Earl Mabry were in, didn't it?

"A I don't know."

Upon objection, the jury was removed and the matter discussed in their absence. Subsequently, the motion for mistrial was overruled, but the objection was sustained and the jury was instructed to disregard the questions and answers concerning the brown envelope and not to consider the same for any purpose in their deliberations.

In light of this instruction and the fact that the envelope was never identified nor shown to contain marihuana, we cannot conclude that reversible error has been shown.

The judgment is affirmed.